## THE PEOPLE v. ELBERT C. ROUNDS.

*Criminal law—Arrest—Resisting officer—Information—Disturbing religious meeting.*

1. In this case the trial judge is held to have fairly submitted the case to the jury. For the points involved reference is had to his charge found in the opinion, at pages 485-6.

2. An information under How. Stat. § 9257, for resisting an officer, which clearly alleges his appointment as marshal of an incorporated village, and his authority to maintain and preserve the public peace, and that he was obstructed, resisted, and opposed by the respondent while attempting to arrest him for disturbing the peace in his presence, is a *substantial* compliance with the statute.

3. The law knows no distinction between the rich and the poor, and. religious liberty is guaranteed to all alike.

Exceptions before judgment from Livingston. (Newton, J.) Argued October 27, 1887. Decided November 3, 1887.

Respondent was convicted of resisting an officer. Conviction affirmed. The facts are stated in the opinion.

*Rollin H. Person (D. Shields,* of counsel), for respondent.

*William P. Van Winkle,* prosecuting attorney, for the People.

MORSE, J. The respondent was tried and found guilty in the circuit court for the county of Livingston of—

"Knowingly and willfully obstructing, resisting, and opposing Seth B. Rubert, marshal of the village of Howell, while in the lawful execution of his office, in attempting to arrest said Elbert C. Rounds for being then and there drunk and disturbing the peace in the presence of said Seth B. Rubert, marshal as aforesaid, the said Seth B. Rubert being then and there engaged in maintaining, preserving, and keeping the peace."

Upon the trial it was conceded that the marshal had no warrant or other process against the respondent at the time of the arrest.

Upon the part of the people the evidence tended to show that on the evening of November 30, 1886, the salvation army were holding services in a building in Howell, known as the "Salvation Army Barracks." The marshal came along, and saw Rounds and some others standing outside the barracks. He heard Rounds say, "When he comes out, I am going to give it to him." Rubert said to Rounds he must not have any trouble there that night, if he did he should arrest him; told him he better go home. Rounds then grabbed hold of him, saying, "Seth, come here, I want to talk with you," and took him off a distance of 15 paces. He told the marshal he was a fool to think he could arrest him, and offered to bet five dollars that he could not do it.

After some parley, Rubert broke away from him and went into the barracks. He had been in there but a short time when Rounds entered, came up to Rubert, grasped him by the coat, and said "Seth, come here, I want to talk with you," and jerked him along towards another corner of the barracks. Rounds talked in a loud voice and disturbed the services then going on. The marshal told him several times that he must keep quiet or he should arrest him. As Rounds did not desist, the marshal finally took hold of the lapels of his coat and said, "I arrest you." Thereupon Rounds drew back, and struck Rubert in the face, and kept on striking him until another officer came to the assistance of the marshal. In going out of the building, Rounds grabbed for a stick of wood, as did also the marshal. The marshal struck Rounds over the head with a stick of wood.

The respondent's version of the transaction was substantially as follows: He is 22 years of age, and resides in Howell. Had drank two glasses of beer that evening, but was not intoxicated. Towards the close of the meeting he was stand-

ing outside with some other boys talking quietly. Rubert came rapidly up to him within arms-length, shook his fist in his face, and in a loud tone of voice said Rounds must not have any trouble there. that night; that he had better go home, for if there was any disturbance there he would have to put him in jail. Denies that he told Rubert that he was a fool to think he could arrest him, or that he offered to bet he could not do so. Asked Rubert to step one side, and may have placed his hand upon his shoulder, but did not pull him. He simply wanted Rubert to explain what he meant, but could get no satisfaction.

He admits that he went into the barracks and walked up to Rubert, and put his hand upon his shoulder, and said to him:

"'I want to speak to you.' We stepped out one side, and I asked what I had done and what he meant. I did not talk loud or so as to disturb anybody. He would not tell me what I had done, or why he talked so to me, but said that he meant just what he said, and should arrest me if I made any disturbance. His refusal to explain matters, or to let me know what he blamed me for, so as to have things understood, and his repetition of the threat, made me mad, and I said to him he could not get to arresting too quick. At that he grabbed me, and I presume I struck him. They say I did, but I was so much excited that I don't know what I did do."

He also testified that he did not grab for a stick of wood, but only put his hand upon the wood-box to straighten himself up. Rubert grabbed a stick, and struck·him over the head.

"The blow struck through the scalp to the bone, and somewhat stunned me."

There was testimony introduced tending to corroborate both theories of the transaction.

We think the circuit judge fairly submitted the case to the jury. He gave the following instructions, as asked by the respondent's counsel:

"No such drunkenness has been proved in this case on the part of the defendant as would justify the officer in making the arrest for that cause alone. The question for the jury to consider is this, was the respondent actually disturbing the public peace, in the salvation army barracks, at the time the arrest was made, and not whether he was about to do so, as the latter is not charged in the information filed in this cause.

"The officer could arrest without a warrant only for a breach of the peace actually being committed in his presence, and if you believe, from all the evidence in the case, that no such breach of the peace took place until the arrest was made, and then only in resisting such arrest to the extent of striking several blows with the fist, then such resistance was justifiable, and you should acquit the defendant.

"If an officer does not keep within the law, he is not acting as an officer, nor entitled to protection as one. Rounds had a right to resist an illegal arrest. You must remember that you cannot take into consideration anything that happened at the barracks before Rubert got there; and that you must find Rounds not guilty if it is reasonably possible to reconcile the facts with innocence."

He also further instructed the jury as follows:

"Again, an officer has no right to arrest without warrant for any breach of the peace not committed in his presence. But for a breach of the peace committed in his presence, he may make an arrest without a warrant, for the purpose of taking the offender before a magistrate for examination or trial. And when an officer sees a breach of the peace being committed in his presence, it is his duty as a peace officer to arrest the offender without a warrant.

"The Supreme Court of this State in the case of *Davis v. Burgess*, has defined what is understood by a breach of the peace. The Court says:

"'By peace, as used in the law in this connection, is meant the tranquility enjoyed by the citizens of a municipality or community, where good order reigns among its members. It is the natural right of all persons in political society, and any intentional violation of that right is a "breach of the peace." It is the offense of disturbing the public peace, or a violation of public order or public decorum. Actual personal violence is not an essential element in the offense. If it were, communities might be kept in a constant state of turmoil, fear, and anticipated danger by the wicked language and conduct of

a guilty party, not only destructive of the peace of the citizens, but of public morals, without the commission of the offense.'"

That section 9302, How. Stat., gave the marshal authority to apprehend and arrest on sight any person disturbing a religious meeting, quoting the section in full; that if the jury found that Rounds followed Rubert into the barracks, knowing that he was an officer, for the purpose and intent of inviting a personal dispute and controversy with him, and did enter into such controversy, and they further found that he did, in a rude and insolent manner, in said barracks, take Rubert by the shoulders, or collar, or lapels of his coat, against Rubert's will, and pull or push him several feet from the place where he stood, these acts would constitute an assault and battery, and breach of the peace, and the marshal would have the right, without process, to arrest him, and take him before a magistrate.

Upon the arraignment of the respondent, his counsel moved to quash the information filed against him, on the ground "that the same did not set out an offense within the original jurisdiction of the court," which motion was overruled. It is claimed in behalf of this motion that the information does not allege anything more than an assault and battery; that there was at the time of the arrest no such crime as drunkenness under the general statutes of this State (see *People v. Beadle*, 60 Mich. 22), and there was no averment that there existed any village ordinance against drunkenness; that to meet the requirements of the statute (How. Stat. § 9257) the information should have charged that Rounds "did obstruct, resist, and oppose Rubert in his lawful acts, attempts, and efforts to maintain, preserve, and keep the peace;" that there is, in effect, no such allegation.

The averment that he "did obstruct, resist, and oppose Rubert in the lawful execution of his office in attempting to arrest respondent for being then and there drunk and disturbing the peace," is claimed not to be sufficient under the statute.

We think the words "being drunk" may be treated as mere surplusage, and that the information is a substantial compliance with the statute. It alleges clearly enough the appointment of the marshal, his authority to maintain and preserve the peace, and his being obstructed while acting in such capacity, and that he was thus obstructed, resisted, and opposed while he was attempting to arrest the respondent for disturbing the peace in his presence.

Error is claimed in that the circuit court allowed evidence to be introduced showing that Rounds made some disturbance in the barracks before the officer came there, and not in his sight. It was admitted by the court on the ground that the evidence tended to show a continuous disturbance of the meeting during the whole evening. The jury were plainly told that they could not take this evidence, or any testimony of what happened at the barracks before the officer got there, into consideration in determining the guilt of the respondent.

As the respondent was also permitted to show that he was engaged in helping to keep quiet and good order at the meeting for some time before the marshal arrived, we are of the opinion that the admission of this testimony, with the instruction to the jury not to regard it as bearing against the respondent, did not prejudice the case, or influence the verdict against him.

Evidence was given on both sides that the meeting was disturbed more or less all the evening, and we are not prepared to say it was not admissible as part of the *res gestæ* showing a breach and disturbance of the peace.

It is complained that the circuit judge went outside of his legal duty, to the prejudice of the respondent, in quoting to the jury the statute against disturbing religious meetings, and in the remarks he made, to the effect that the humblest religious worshiper is protected by the law as fully as is the one who worships in the "costly temple which represents the monument of the faith and hope of the worshiper."

We know not what was the occasion of this remark, but it is to be presumed that there was shown during the trial more or less prejudice against the "Salvation Army," as it is a matter of general knowledge that such prejudice exists in every place, and that these devotees are everywhere, because of their peculiar and not altogether pleasant methods of worship, subject to ridicule, persecution, and contumely. If such was the case here, the remarks were eminently proper, and could do no harm at any rate. It was but a statement that the law knows no distinction between the rich and the poor, and that religious liberty is guaranteed to all alike.

There was no error committed upon the trial, and the proceedings are affirmed.

SHERWOOD and CHAMPLIN, JJ., concurred.

CAMPBELL, C. J., did not sit.