UNITED STATES, Appellant

v

HAROLD S. HEWSON, Private, U. S. Army, Appellee

13 USCMA 506, 33 CMR 38

No. 16,444

March 1, 1963

*Captain Peter J. McGinn* argued the cause for Appellant, United States. With him on the brief was *Lieutenant Colonel Francis M. Cooper.*

First Lieutenant *Richard O. Skoog* argued the cause for Appellee, Accused. With him on the brief were *Lieutenant Colonel Ralph Herrod* and *Captain Thomas Stapleton*.

## Opinion of the Court

FERGUSON, Judge:

Private Harold S. Hewson was tried February 28, 1962, before a general court-martial convened by the Commanding General, U. S. Army, Alaska, upon charges of escape from confinement, communication of a threat, and breach of the peace, in violation, respectively, of Uniform Code of Military Justice, Articles 95, 134, and 116, 10 USC §§ 895, 934, 916. He pleaded guilty, and the court returned findings to the same effect. It sentenced him to bad-conduct discharge, forfeiture of all pay and allowances, and confinement at hard labor for one year. The convening authority approved the sentence on April 6, 1962, and forwarded the case for review by a board of review. On October 18, 1962, the board set aside the charge of breach of the peace and reassessed the sentence, approving only so much thereof as provided for bad-conduct discharge, total forfeitures, and confinement at hard labor for six months. On November 16, 1962, The Judge Advocate General certified the board's decision to this Court upon the following question:

"WAS THE BOARD OF REVIEW CORRECT IN HOLDING THAT THE ACCUSED'S PLEA OF GUILTY TO THE SPECIFICATION OF ADDITIONAL CHARGE II WAS A NULLITY BECAUSE THE SPECIFICATION IS FATALLY DEFECTIVE ON ITS FACE?"

On December 17, 1962, The Judge Advocate General took further action on accused's sentence, remitting so much of the unexecuted portion thereof as exceeded bad-conduct discharge and forfeiture of all pay and allowances.

The specification in question alleges:

"In that Private (E–1) Harold S. Hewson, . . . did, at Fort Richardson, Alaska, on or about 18 January 1962, cause a breach of the peace by wrongfully shouting, striking the bars of his cell, shaking his cell door, jumping and kicking in his cell and on his bunk, and starting a fire in his cell."

The board of review concluded that the count set forth no offense as it was "of the opinion that disorderly acts, such as alleged in the specification, when committed in a cell of a prison, stockade, or similar confinement facility, are not committed in a 'public place' nor, . . . are they considered as disturbing that segment of society or the public peace or tranquility of which the law, including Article 116, Uniform Code of Military Justice, is intended to protect." In short, it was held that Code, supra, Article 116, was intended only to govern those "disorders and disturbances . . . which occur in free society, among free citizens in the public at large." Accordingly, it found the specification, its allegations limited to conduct within a prison cell, alleged no offense and that accused's plea of guilty thereto was a nullity.

We disagree with the board's construction of Code, supra, Article 116, and, in consequence, with its holding that the specification did not allege the offense of breach of the peace. The statute in question provides:

"Any person subject to this chapter who causes or participates in any riot or breach of the peace shall be punished as a court-martial may direct." [10 USC § 916, supra.]

The legislative history of Code, supra, Article 116, indicates that as "a specific offense, 'breach of the peace' is a new offense in military justice . . . [although] [m]any offenses previously charged under Article of War 96 or Article 22, A. G. N. [the statutory predecessors to Code, supra, Article 134, 10 USC § 934], are now chargeable as breaches of the peace under Article 116." Legal and Legislative Basis, Manual for Courts-Martial, United States, 1951, page 268. The Manual for Courts-Martial, United

States, 1951, states the offense consists of "an unlawful disturbance of the peace by an outward demonstration of a violent or turbulent nature," and, in its discussion, goes on to declare, at page 350:

". . . The acts or conduct contemplated by this article are those which disturb the public tranquility or impinge upon the peace and good order to which the community is entitled. The words 'community' and 'public' include within their meaning a military organization, post, camp, ship or station."

The Manual's observations concerning the nature of the offense punishable under Code, supra, Article 116, appear entirely accurate, although, of course, they are not binding upon us. See United States v Smith, 13 USCMA 105, 32 CMR 105. The crime of breach of the peace existed at ■ common law and consisted of conduct either actually breaking the *pax regis* or tending to provoke or excite others to break it. 4 Blackstone, Commentaries (Ewell's 2d ed), page 683, *et seq*. In this country, the offense is universally held to be generic in nature,

". . . [A]nd includes all violations of the public peace or order, or decorum; in other words, it signifies the offense of disturbing the public peace or tranquility enjoyed by the citizens of a community; a disturbance of the public tranquility by any act or conduct inciting to violence or tending to provoke or excite others to break the peace; a disturbance of public order by an act of violence, or by any act likely to produce violence, or which, by causing consternation and alarm, disturbs the peace and quiet of the community." [11 CJS, Breach of The Peace, § 1.]

See also 5 Words and Phrases (Perm ed), Breach of the Peace, page 760, *et seq*.

It will be seen, therefore, that it is an accused's conduct and its tendency or effect to upset public ■ order which is made criminal rather than such behavior in a particular location. Cf.

**508**

United States v Lowe, 4 USCMA 654, 16 CMR 228. The crime may involve an endless variety of acts and incidents. State v Ploof, 116 Vt 93, 70 A2d 575 (1950). The purpose is to protect all persons against disturbance by another's conduct of their right to exist quietly and peacefully. The gravamen of the crime was succinctly described in Davis v Burgess, 54 Mich 514, 20 NW 540 (1884), at page 542:

"Now, what is understood by 'a breach of the peace?' By 'peace,' as used in the law in this connection, is meant the tranquility enjoyed by citizens of a municipality or community where good order reigns among its members. It is the natural right of all persons in political society, and any intentional violation of that right is 'a breach of the peace.' It is the offense of disturbing the public peace, or violation of public order or public decorum."

See also People v Rounds, 67 Mich 482, 35 NW 77 (1887).

The commission of a breach of the peace, then, does not depend upon whether an accused's acts ■ occur in surroundings to which members of the public have a right to resort or generally repair. Rather, it depends upon whether his behavior, not otherwise protected or privileged, tends to invade the right of the public or its individual members to enjoy a tranquil existence, secure in the knowledge that they are guarded by law from undue tumult or disturbance. In short, the important consideration is the disturbance of tranquility and not whether the misconduct occurs in a "public place" or one of the such limited access as to be deemed unavailable to the citizenry in general.

Applying these age-old concepts of the offense charged to the legal rationale of the board of review, ■ it is clear it erred in its decision that Code, supra, Article 116, did not include disorders of the nature here charged when committed within the confines of a stockade. The fact that the commonalty may not be entitled to resort thereto

is, as noted above, not controlling. Other prisoners, just as the ordinary citizen, are entitled peacefully to enjoy the limited accommodations afforded by their incarceration for, though their normal freedom and privileges are curtailed by the imposition of confinement, they nonetheless remain members of the public entitled to protection against breach of the peace. The same consideration applies to guards, administrative personnel, and others who, as free individuals, work and frequently live at stockades or prisons. These, too, are entitled to pursue their lives free from undue disturbance and tumultuous invasion of their right to enjoy quietude. Indeed, we intimated as much in United States v Duggan, 4 USCMA 396, 15 CMR 396, and United States v Watson, 4 USCMA 557, 16 CMR 131. We find, therefore, that Code, supra, Article 116, was intended to protect the rights of all members of military society and quite without regard to whether they are to be found sojourning in confinement facilities.

The certified question is answered in the negative. We need not, however, return the case to the board of review. While its erroneous disapproval and dismissal of the Additional Charge and its specification bore upon its reassessment of the sentence, The Judge Advocate General has since remitted all punishment in excess of a bad-conduct discharge and total forfeitures. As the only punishment which may now be ordered executed is less than that which the board finally approved, necessarily the only action which it could take on remand would be reinstatement of the findings of guilty and affirmance of the penalty approved by The Judge Advocate General. We may accomplish the same action at this level without the need for further delay in the proceedings, already unduly protracted.

Accordingly, the decision of the board of review regarding the findings of guilty of the Additional Charge and its specification is set aside, and such findings are reinstated. As thus modified, the decision of the board of review is affirmed.

Chief Judge QUINN and Judge KILDAY concur.