284

UNITED STATES, Appellee,

v.

Alan E. STEVENS, Airman Apprentice, U.S. Navy, Appellant.

NMCM No. 83 0399.
No. 46,352.

U.S. Court of Military Appeals.

March 11, 1985.

For Appellant: *Lieutenant Colonel M.W. Lucas, USMC* (argued).

For Appellee: *Major Eligah D. Clark, Jr., USMC* (argued); *Commander W.J. Hughes, JAGC, USN,* and *Lieutenant Commander W.A. Dorsey, JAGC, USNR* (on brief); *Commander Michael P. Green, JAGC, USN.*

*Opinion of the Court*

COX, Judge.

Pursuant to his pleas, appellant was convicted of two specifications of causing a breach of the peace, in violation of Article 116, Uniform Code of Military Justice, 10 U.S.C. § 916.[1] We granted review (16 M.J. 184) in order to ascertain whether the "allegations" of the specifications were sufficient to "allege" such an offense. Our concern was whether the conduct involved could rise to the level of a breach of the peace under Article 116 (as opposed to mere disorderly conduct, in violation of Article 134, UCMJ, 10 U.S.C. § 934). We now conclude that the specifications were indeed adequate, and we affirm the decision of the United States Navy-Marine Corps Court of Military Review.

The specifications are alleged in the following terms:

Specification 1: In that Airman Apprentice Alan E. Stevens, U.S. Navy, on

---

1. Appellant was sentenced to a bad-conduct discharge, confinement at hard labor for 6 months, forfeiture of $366.00 pay per month for 6 months, and reduction to pay grade E–1. In accordance with a pretrial agreement, the convening authority approved the sentence, but suspended the confinement and forfeitures in excess of 2 months. The Court of Military Review affirmed.

active duty, Fighter Squadron THREE–TWO, did, on board USS Independence, at sea, on or about 27 August 1982, cause a breach of the peace by painting a bull's eye on his torso and wrongfully entering the Flight Deck thereby disrupting flight operations.[2]

Specification 2: In that Airman Apprentice Alan E. Stevens, U.S. Navy, on active duty, Fighter Squadron THREE–TWO, did, on board USS Independence, at sea, on or about 24 September 1982, cause a breach of the peace by wrongfully boarding an F–14 aircraft, pulling the ejection system safety pins, and threatening to kill himself while seated in the ejection seat.

The elements of breach of the peace are: (a) That the accused caused or participated in a certain act of a violent or turbulent nature, as alleged; and (b) that the peace was thereby unlawfully disturbed.

Para. 195*b*, Manual for Courts-Martial, United States, 1969 (Revised edition). As the words "violent" and "turbulent" are clearly expressed in the disjunctive, appellant's acts need not have amounted to both.

We recognize that, by virtue of appellant's pleas, the Government was denied a full opportunity to develop the backdrop for appellant's actions [*i.e.* life on board the flight deck of the USS INDEPENDENCE (CV–62) during sea operations]. Thus, in attempting to determine whether turbulence or violence was involved, we are largely dependent on appellant's own statements during the providence inquiry.[3] Therein, he described how he painted a bull's eye on his torso; walked out onto the flight deck as launch operations were about to commence; and took up a stance "just like in position to bull fight in front of" an airplane. Continuing, he stated:

When I went to the flight deck, I was walking behind an F–14 towards one [apparently another F–14], and I had glasses on and blew them off at least thirty or forty feet. And, I kept walking and he [apparently the pilot of one of the planes] started getting real mad and I backed up and I started walking toward the—I was going to go toward the wings, but I would be seen too much. And, then there were a bunch of people, at first, two people came up to me and grabbed me, I got them off of me and they grabbed me again and I shook them off of me again. And, then some more grabbed me, sir, and they carried me off, sir.

With respect to the second episode, appellant described how he opened the canopy of an untended aircraft; pulled the canopy safety pins; climbed into the cockpit; and prepared to pull the ejection handle. It was appellant's understanding that this would cause the open canopy to initially slam shut, before blowing away. Purportedly,[4] he intended to stick out his neck and have his head cut off when the canopy came down. However, he was quickly discovered by others. A group of servicemembers gathered—some of them climbing up onto the plane—and tried to talk him down. Eventually, appellant's squadron commander arrived and ordered him out of the plane. Appellant complied. He informed the military judge that, at one point during the incident, he "felt like pushing all the way," but he "didn't want to hurt anybody." Witness statements introduced by the prosecution indicate that those in the area were equally aware of the potential hazards.

---

2. Special Court-Martial Order No. 81–82 omits the word "did" from this specification.

3. There is no question but that appellant's pleas were provident, in the sense that he expressly acknowledged his guilt with respect to each of the elements of the two offenses.

4. There was a considerable divergence of views as to whether appellant was serious in these apparent suicide attempts. Appellant maintained that he was. Prosecution evidence in aggravation of sentence suggested that appellant merely staged these and other events in order to convince Navy officials to separate him administratively from the service.

██ Where, as here. pleadings have not been attacked at trial, it has long been our rule that

> it is enough to withstand a broadside charge that they do not state an offense, if the necessary facts appear in any form or by fair construction can be found within the terms of the specification.

*United States v. Sell,* 3 U.S.C.M.A. 202, 206, 11 C.M.R. 202, 206 (1953). We need only look to the providence inquiry here to identify at least turbulence caused by appellant's behavior. Therefore, as a matter of law, a breach of the peace under the Uniform Code was sufficiently alleged.

The decision of the United States Navy-Marine Corps Court of Military Review is affirmed.

Chief Judge EVERETT concurs.

Judge FLETCHER did not participate.