**UNITED STATES**

v.

**Sergeant Franklin R. TAYLOR, Jr., FR 226–11–1229, United States Air Force.**

**ACM S28234.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 11 Oct. 1989.

Decided 18 April 1990.

Appellate Counsel for the Appellant: Colonel Richard F. O'Hair and Captain Michael D. Burt.

Appellate Counsel for the United States: Colonel Joe R. Lamport, Colonel Robert E. Giovagnoni and Captain Thomas E. Wand.

Before BLOMMERS, KASTL and MURDOCK, Appellate Military Judges.

## DECISION

KASTL, Senior Judge:

A "minor incident was compounded into a major catastrophe," complains Sergeant Taylor, appealing his conviction for breach of the peace, assault, and failure to obey an order, violations of Articles 116, 128, and 92, UCMJ, 10 U.S.C. §§ 916, 928, 892. Tried by military judge alone, he was found guilty despite pleas to the contrary and sentenced to a bad conduct discharge, forfeiture of $150.00 per month for four months, confinement for four months, and reduction to airman basic.

We find considerable merit in his assertions of error and will grant a measure of relief as to two of the offenses of which he was convicted.

## Breach of the Peace

█ The appellant was dozing on the couch at his on-base quarters at Chanute Air Force Base, Illinois, when his wife inquired as to the whereabouts of their checkbook. He advised her it was in the car. She was unable to find it and communicated with him again, indicating she wanted to cash a check and go out to eat. Things had not been going well between the two. In a fit of pique, the appellant took a knife, went out to the car, and slashed the tires. At trial, the prosecution introduced evidence that the car was registered in Mrs. Taylor's name; countering, the defense pointed out that the appellant paid for the car and bought the tires. There was no evidence that any member of the public had been disturbed by the tire slashing.

Under these particular circumstances, we are not convinced that the appellant's activities amounted to a breach of the peace in violation of Article 116, UCMJ.

The Government appellate brief is correct in noting that "case law on Article 116, UCMJ ... is practically non-existent." One of the most definitive treatments occurs in *United States v. Hewson*, 13 U.S.C. M.A. 506, 33 C.M.R. 38, 40 (1963). Reviewing the legislative history of Article 116, the Court of Military Appeals explained that a conviction could be approved when the appellant's behavior:

> not otherwise protected or privileged, tends to invade the right of the public or its individual members to enjoy a tranquil existence, secure in the knowledge that they are guarded by law from undue tumult or disturbance.

*See also* MCM 1984, Analysis, App. 21, page A21–96; *United States v. Ludden*, 43 C.M.R. 564 (A.C.M.R.1970); *United States*

*v. Sullivan*, 3 C.M.R. 457, 459 (N.B.R. 1952).

We also find perceptive the comment of the Navy Board of Review in *United States v. Burrow*, 26 C.M.R. 761, 763 (N.B. R.1957), that reasoned analysis of the crime of breach of the peace "soon serves to enmire the researcher in a veritable morass of semantics and/or overlapping meanings and connotations."

The precedents often seem irreconcilable, turning on "how much conduct is enough" to constitute the offense. Corpus Juris Secundum summarizes by suggesting that someone must have been disturbed by the complained of action. *See* 11 C.J.S. *Breach of Peace* 820 (1938). One commentator reasons that there must be some impact on the public. *Wharton's Criminal Law* (14th ed. 1981) 422. *See also* 12 Am.Jur. *Breach of Peace* 661 (1964). Another treatise writer perhaps says it best—the breach must be "of sufficient magnitude for the law's notice." *Miller on Criminal Law* 483 (1934).[1]

Here, we note that the prosecution failed to show that anyone other than his wife was disturbed by the appellant's conduct. It's a free country; slashing one's own car tires to "get even" with a spouse may be foolish or irrational. Without more, we are unprepared to say it is criminal conduct sufficient to violate Article 116, UCMJ. *See People v. Gingello*, 324 N.Y.S.2d 122, 67 Misc.2d 224 (1971); *Brooks v. State*, 67 Miss. 577, 7 So. 494 (1890) (author cautions against flooding the courts with such "trifling and vexatious prosecutions").

## Assault on Security Police

█ Charitably speaking, this appellant was not having a good day. While slashing the car tires, he cut his thumb and began to

---

1. Civilian and military cases exhibit various ways in which human beings manifest their stubbornness and are called to account for disturbing others. *See, eg., State v. Linkhaw*, 69 N.C. 214 (1881) (singing too loud in church and holding notes at the end of the verses, thereby annoying parishioners); *State v. Mancini*, 91 Vt. 507, 101 At. 581 (1917) (shenanigans at a Grange dance). In a military setting, *see United States*

*v. Nestor*, 43 Bd. of Rev. 305, 313 (1944) (threatening to urinate on superior's feet at a night club); *United States v. Norman*, 2 Bd. of Rev. 139, 143 (1943) (threatening Panamanian woman and killing her parrot); *United States v. Grubb*, 20 Bd. of Rev. 213, 218 (1943) (disorderly in a tourist home, commenting about police that "they hang a pistol on these 4F sons-of-bitches and they think they're God Almighty.")

bleed profusely. His wife called the Security Police.

When they arrived at his quarters, a contest of wills quickly developed between the parties. The appellant was argumentative. Also, there was some evidence that Staff Sergeant Brever, who was wearing the uniform of a Security Policeman, did not identify himself formally, as the appellant requested.

At trial, the parties had markedly different interpretations of subsequent events at the appellant's house. We need not resolve whose version is closer to the truth.[2] Suffice to say that by the time the parties arrived at the hospital, where the appellant's thumb was to be treated, disinterested corpsmen found a great deal of tension between the police and the appellant.

At the hospital, the appellant continued with his uncooperative attitude towards the police. He kept expressing a wish to telephone his father and an attorney. He indicated several times that he wanted to go to the bathroom, and apparently was permitted to do so twice.

We find crucial Sergeant Brever's testimony as to what happened next at the hospital:

Well after about six or seven times of getting up, he [the appellant]—*he was, like, up close to me where I felt threatened, and I pushed him back* and said, "Sergeant Taylor, you need to get out of my space and go sit back down on the gurney." He did, and about a minute later, he got back up. And this time when he got up, he said "Get out of my way," and he pushed me—pushed me back, but when he did that with his left hand, his—his right hand with the dish [in which his wounded finger was soaking] came flying up. Okay, I immediately grabbed his upper body, Sergeant Dolan immediately assisted me, and grabbed, like, his—his left side in the middle. And I told him to put him back

on the gurney, and we walked him over to the gurney (emphasis added).

At this juncture, there were four Security Policemen actively involved with the appellant, as well as a police guard dog. It was only after this incident that the appellant was placed under apprehension.

Under these circumstances, we find that the Government has not established to our satisfaction that the appellant is guilty of assault. The testimony of Sergeant Brever is crucial; it indicates that he pushed the appellant first. At that time, the appellant was not under any sort of apprehension or detention; nor, as near as we can tell, did the Security Police have the authority to require him to remain for medical treatment.

We see this as a situation where aggressive words and bad feelings between the parties led to a "pushing and shoving match." Why the police remained at the hospital in strength is not resolved in the Record of Trial. We have no doubt that the appellant was acting pig-headed and difficult. Nonetheless, he was not under apprehension and, as near as we can decipher, he was free to leave the hospital when he so chose. Sergeant Brever, by his own testimony, was the first individual to escalate beyond words and physically push another person. We do not doubt that there was ample justification to be angry with the splenetic appellant; his conduct could have tried the patience of a Zen Master. Nevertheless, we find insufficient evidence to prove that the appellant's conduct in pushing back against Sergeant Brevard should be regarded as an actionable assault.

Similarly, the fact that some stitches were pulled up out of a Security Police pistol holster in getting the appellant back on a gurney does not show the appellant assaulted the police. Clearly, there was a scuffle; but there is no direct evidence the appellant ripped Sergeant Brever's weapon

---

**2.** At trial, the appellant's wife testified that Sergeant Brever used extremely abusive and combative language in regard to her husband. For his part, Brever denied that he had engaged in untoward language. Because of our disposition

of this matter we need not consider whether or not Sergeant Brever departed at this juncture from his official duties as a policeman. *See generally United States v. Vallenthine*, 2 M.J. 1170, 1172–1173 (N.C.M.R.1975) and cases cited.

holster or that, if he did so, it was intentional.

### The Order

■ Finally, we consider the order that the appellant submit to blood and urine tests on the night in question—he eventually provided them the following day. We are convinced from reading the record that a clear-cut order from his commander was conveyed to the appellant through both his first sergeant and hospital personnel. We believe this resolves any possible quibble that the appellant thought the order was fiction, invented by the police to fool or harass him. We therefore approve findings of guilty of this offense.[3]

### Sentence Appropriateness

■ We note with concern that this appellant was held in pretrial confinement for 49 days for what essentially was "a domestic dispute which escalated into a court-martial." *See United States v. Fayne*, 26 M.J. 528 (A.F.C.M.R.1988). Appellant's pretrial confinement documentation has been incorrectly omitted from the record. *See* Air Force Regulation 111-1, *Military Justice Guide*, Figure 14-1, paragraph 14 (30 September 1988).[4] Without more information, we were particularly troubled by such lengthy pretrial confinement since hospital personnel reported the appellant "very cooperative" with everyone but the on-scene Security Police officials and the appellant's work record is reasonably satisfactory. That paperwork has now been appended to the Record. It does not resolve our initial concerns.

We dismiss the findings of guilty of Charge I and Charge III and their respective specifications, the breach of the peace and assault offenses. We approve the findings of guilty of Charge II and its

specification, refusing the lawful order to submit blood and urine samples.

■ We now reassess the sentence. Considering the pretrial confinement, together with all facts and circumstances, we find appropriate only so much of the sentence as extends to confinement for three months and forfeiture of $150.00 per month for three months.

The findings of guilty and the sentence, both as modified, are

AFFIRMED.

Judge MURDOCK concurs.

Senior Judge BLOMMERS (concurring in part and dissenting in part):

MCM, Part IV, para. 41c(2) (1984):

A 'breach of the peace' is an unlawful disturbance of the peace by an outward demonstration of a violent or turbulent nature. The acts or conduct contemplated by this article [Article 116, UCMJ] are those which disturb the public tranquility or impinge upon the peace and good order to which the community is entitled.

So a breach of the peace is defined under military law. "Violence" is "[t]he exertion of any physical force so as to injure, damage or abuse." *Black's Law Dictionary*, 1408 (5th Ed.1979).

The appellant and his wife were engaged in an argument over the whereabouts of her checkbook. The argument took place within their quarters on base. The appellant had indicated her checkbook was outside in their car, his wife said she had looked in the car and could not find it. After some further exchanges, the appellant went into the kitchen, obtained a knife, proceeded outside, and slashed the front and rear tires on the left side of the vehicle

---

3. These samples eventually proved negative for any illegal substances in the appellant's urine or blood.

4. Another aspect of this case outside the court-martial itself concerns us. We recently wrote in *United States v. Boyle*, 30 M.J. 656 (1990) that more-streamlined Staff Judge Advocate's Recommendations were vastly preferable to "the former Byzantine process." This case goes to the other extreme. Matters raised by the appellant in his response to the Staff Judge Advocate's Recommendations were met by a two-paragraph "boilerplate" Addendum in no way responsive to the matters submitted by the appellant or tailored to assist the convening authority in regard to this individual or his conduct.

(which was registered in his wife's name). *The vehicle was parked on a public street.* The appellant's wife observed his conduct from the front porch of their quarters. She ran to their next door neighbors house and called the Security Police. She testified: "At that point, it shocked me because it was so unusual, and I went next door and I phoned Security Police. It was my first reaction." While slashing the tires, the appellant cut his hand. This led to his being escorted to the base hospital by the police for medical treatment.

Had this dispute remained inside the appellant's quarters, I would agree with the conclusion reached by my brothers, even had the police been called. However, once the accused departed his quarters and slashed the car tires, a breach of the peace occurred. *See City of Bismarck v. Travis,* 154 N.W.2d 918 (N.D.1967); *Miller on Criminal Law* 483 (1934).

I would affirm the breach of the peace offense as charged. I do not view its prosecution as "trifling and vexatious." Even if we assume that the appellant's conduct does not rise to the level of a breach of the peace, then surely he is guilty of disorderly conduct, a lesser included offense to that charged. MCM, Part IV, para. 73c(2) (1984). My brothers choose not to address that aspect of the criminal liability equation.

I concur with Senior Judge Kastl's rationale supporting our dismissal of the assault charge and its specification. I do not concur with the reassessment of the sentence.

Since I would affirm the findings of guilty of the breach of the peace and failing to obey an officer's order, on reassessment the punitive discharge and reduction in grade would be included in the sentence affirmed. In this regard I note the appellant has an established record of inappropriate behavior during his off duty time. Two of his first three performance reports (covering the years 1983–1985) contain specific comments in this regard. In 1986 he received nonjudicial punishment for assault and battery (striking a female) and drunk and disorderly conduct. These matters were before the trial court. From the commander's letter of transmittal (AF Form 65, *Transmittal of Court–Martial Charges*) contained in the allied papers we learn he received a second nonjudicial punishment, also involving assault, was involved in two alcohol-related incidents on 16 November 1986 and 5 January 1987, has been counseled for brawling, and has had multiple traffic violations. I mention this latter document only as the information contained therein might bear upon the appellant's potential for rehabilitation.

I would affirm the findings of guilty of a breach of the peace as charged, dismiss the assault charge and its specification, and reassess the sentence to include the bad conduct discharge, reduction in grade, and some portion of the other components thereof.