*This opinion is subject to revision before publication.*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

———————————

## UNITED STATES
Appellee

**v.**

## Samuel H. SMITH, Airman First Class
United States Air Force, Appellant

**No. 23-0207**
Crim. App. No. 40202

Argued January 24, 2024—Decided November 26, 2024

Military Judges: Rebecca E. Schmidt (arraignment and pretrial motions) and Colin P. Eichenberger (trial)

For Appellant: *Captain Trevor N. Ward* (argued); *Daniel Conway*, Esq. (on brief); *Major David L. Bosner* and *Scott Hockenberry*, Esq.

For Appellee: *Captain Vanessa Bairos* (argued); *Colonel Matthew D. Talcott, Lieutenant Colonel James P. Ferrell,* and *Mary Ellen Payne*, Esq. (on brief).

Judge HARDY delivered the opinion of the Court, in which Chief Judge OHLSON, Judge SPARKS, Judge MAGGS, and Judge JOHNSON joined.

———————————

Judge HARDY delivered the opinion of the Court.

A general court-martial convicted Appellant, contrary to his pleas, of one specification each of breach of the peace, aggravated assault with a dangerous weapon, wrongful use of marijuana, and two specifications of communicating a threat in violation of Articles 116, 128, 112a, and 115, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 916, 928, 912a, 915 (2018). Appellant's breach of the peace conviction stems from aggressive comments that he made off duty and out of uniform to an employee at a gas station far from base. Before this Court, Appellant challenges the constitutionality and legal sufficiency of that conviction.

We hold that Appellant's conviction under Article 116, UCMJ, was unconstitutional as applied and must be set aside. The statements Appellant made to the gas station clerk did not fall within any of the unprotected categories of speech and were thus protected by the First Amendment. The judgment of the United States Air Force Court of Criminal Appeals (AFCCA) is reversed as to Appellant's conviction under Article 116, UCMJ.

## I. Background

In January 2020, Appellant and his friend, AL, arrived at a gas station near Las Vegas, Nevada. Appellant parked his car and entered the gas station to buy cigarettes while AL waited inside of the vehicle. AB, who was the cashier at the gas station that night, saw Appellant enter the store while she was outside taking a work break.

Appellant attempted to purchase cigarettes from the other cashier working that night, but she was too young to make tobacco sales and asked AB to come inside and assist Appellant. AB came back inside to help, but Appellant was apparently displeased with the delay and began to rant about AB's lack of professionalism. Micky, another patron, reacted to Appellant's angry remarks by responding "don't yell at [AB] like that, she's doing her job and she's damn good at it." Appellant allegedly turned toward Micky and told him, "stay out of this man, you don't want to get hurt." The tension between Appellant and Micky did not escalate

into a physical altercation, and Micky subsequently exited the store. Appellant also left the store shortly thereafter, but no evidence in the record suggests that he saw Micky again or communicated with him any further. After her interaction with Appellant, AB also went back outside to talk with some of her family members who had come to visit her at work.

Upon leaving the store, Appellant walked back to his car where PF, another gas station patron, was waiting to fuel his truck. When PF asked Appellant to move his car out of the way so that he could access a gas pump, Appellant complained to PF about what had just occurred inside. PF testified that Appellant was "disturbed" and "angry" and used profane language when describing the incident. Then Appellant got back into his car, drove it towards the entrance of the store near to where AB had congregated with her visitors, and yelled out of his window for AB to "tell that pretty boy mother f[***]er in there he needs to watch his a[**], there are some hard hitting guys in the street" (or words to that effect). Micky—the apparent subject of Appellant's statement—had returned inside the gas station and was out of earshot. However, Appellant's statement was made directly in front of AB who testified that she responded by chuckling at Appellant and telling him to get out of her parking lot. At that point, Appellant began to pull a firearm from his side and point it at AB. AL quickly intervened and pushed Appellant's arm down, and they sped out of the gas station in their car.

In addition to other charges related to brandishing his loaded handgun, driving recklessly, communicating several threats, and wrongfully using marijuana, Appellant was also charged with breaching the peace in violation of Article 116, UCMJ. In relevant part, the charging language for that specification stated that Appellant "cause[d] a breach of the peace by using the following provoking language toward [AB], to wit: 'Tell that pretty boy in there that there are some hard hitting people in these streets, and he better watch his back,' or words to that effect." A panel of officer and enlisted members convicted Appellant of

breaching the peace, and the military judge sentenced him to one month of confinement for that specific offense.

As relevant to this appeal, Appellant challenged the legal and factual sufficiency of his Article 116 conviction before the AFCCA. *United States v. Smith*, No. ACM 40202, 2023 CCA LEXIS 196, at *43, 2023 WL 3294709, at *19 (A.F. Ct. Crim. App. May 5, 2023) (unpublished). Appellant raised multiple arguments, including that his charged conduct was constitutionally protected speech. The AFCCA denied relief, concluding that a rational factfinder could determine that the Government proved the elements of the Article 116 offense beyond a reasonable doubt. *Id.* at *54, 2023 WL 3294709, at *19.

First, the court held that Appellant " 'caused or participated in a certain act of a violent or turbulent nature' " through his loud and profane statement to AB. *Id.* at *56, 2023 WL 3294709, at *19. In doing so, the AFCCA did not look at Appellant's words in a vacuum, but considered the context in which they were made—especially in light of his incident with AB and Micky in the gas station and his act of brandishing a firearm. *Id.* at *56-57, 2023 WL 3294709, at *19. For similar reasons, the AFCCA also concluded that a rational factfinder could find Appellant's language unlawfully disturbed the peace. *Id.* at *57, 2023 WL 3294709, at *20. Specifically, the court determined that Appellant's language—when viewed in context—disturbed the public's entitlement to tranquility, peace, and good order. *Id.*, 2023 WL 3294709, at *20.

The AFCCA also discarded Appellant's argument that "the absence of 'fighting words' in the charged language" made his speech constitutionally protected. *Id.* at *60, 2023 WL 3294709, at *20. The court decided that fighting words are not the only category of prohibited speech because "there are categories of communication and certain special utterances to which the majestic protection of the First Amendment does not extend" because such words "are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the

4

social interest in order and morality." *Id.* at \*60-61, 2023 WL 3294709, at \*20 (internal quotation marks omitted) (quoting *Bose Corp. v. Consumers Union*, 466 U.S. 485, 504 (1984)). The AFCCA explained that Appellant's "pretty boy" threat "was not an essential part of any exposition of ideas," had arguably "no social value," and its benefits, if any, did not outweigh society's interest in order and morality. *Id.* at \*61, 2023 WL 3294709, at \*21 (internal quotation marks omitted) (citation omitted). Thus, the AFCCA concluded that Appellant's language did not merit constitutional protection. *Id.* at \*62, 2023 WL 3294709, at \*21.

We granted review of the following issue:

> Whether Appellant's conviction for breach of peace, based exclusively on speech, is legally insufficient and unconstitutional where, inter alia, all parties agree the charged speech did not constitute "fighting words."

*United States v. Smith*, 83 M.J. 479 (C.A.A.F. 2023) (order granting review).

## II. Standard of Review

This Court reviews issues of legal sufficiency de novo. *United States v. Richard*, 82 M.J. 473, 476 (C.A.A.F. 2022). Whether a statute is constitutional as applied is also an issue this Court reviews de novo. *United States v. Goings*, 72 M.J. 202, 205 (C.A.A.F. 2013); *United States v. Ali*, 71 M.J. 256, 265 (C.A.A.F. 2012). There is "a presumption against the waiver of constitutional rights, and for a waiver to be effective it must be clearly established that there was an intentional relinquishment of a known right or privilege." *United States v. Sweeney*, 70 M.J. 296, 303-04 (C.A.A.F. 2011). For these reasons, when an appellant alleges for the first time on appeal that his conviction was unconstitutional as applied to him, this Court generally declines to find waiver and instead applies plain error review. *Goings*, 72 M.J. at 205. Under such review, the appellant bears the burden of pointing to particular facts in the record that prove why his interests should overcome the determinations of Congress and the President that his conduct should be proscribed. *Id.*

## III. Discussion

Article 116, UCMJ, states that any servicemember "who causes or participates in any riot or breach of the peace shall be punished as a court-martial may direct." The President has further directed that servicemembers can breach the peace under Article 116, UCMJ, in two ways: (1) by partaking in a violent or turbulent act; or (2) by using provocative speech.[1] The Government charged Appellant with causing a breach of peace solely by using "provoking language" toward AB, without any reference to his other conduct. Thus, under the Government's selected charging scheme, Appellant was convicted of breaching the peace based on his spoken words alone.

In its arguments, the Government repeatedly references Appellant's unruly conduct in addition to the provoking statement he made to AB—particularly the fact that he brandished a firearm. The Government forgets, however, that it controls the charge sheet, *United States v. Simmons*, 82 M.J. 134, 141 (C.A.A.F. 2022), and the Government chose to charge Appellant under Article 116, UCMJ, based solely on his speech. The Government could have charged Appellant with breaching the peace through both his words

---

[1] The elements of the offense of breach of the peace under Article 116, UCMJ, are that (a) the accused caused or participated in a certain act of a violent or turbulent nature; and (b) the peace was thereby unlawfully disturbed. *Manual for Courts-Martial, United States* pt. IV, para. 54.b.(2) (2019 ed.) (*MCM*). The *MCM* further explains:

> Loud speech and unruly conduct may also constitute a breach of the peace by the speaker. A speaker may also be guilty of causing a breach of the peace if the speaker uses language which can reasonably be expected to produce a violent or turbulent response and a breach of the peace results. The fact that the words are true or used under provocation is not a defense, nor is tumultuous conduct excusable because incited by others.

*MCM* pt. IV, para. 54.c.(2).

and conduct,[2] but it elected not to do so. We therefore must review Appellant's Article 116 conviction to determine whether the Government's criminalization of Appellant's speech violates Appellant's First Amendment rights.

### A. Free Speech in the Military

To avoid any future confusion, we begin by acknowledging that both the Supreme Court and this Court have recognized that the government may place additional burdens on a servicemember's First Amendment free speech rights due to the unique character of the military community and mission. *United States v. Wilcox*, 66 M.J. 442, 448 n.3 (C.A.A.F. 2008) (citing *Parker v. Levy*, 417 U.S. 733, 758 (1974)); *United States v. Priest*, 21 C.M.A. 564, 570-72, 45 C.M.R. 338, 344-46 (1972); *United States v. Gray*, 20 C.M.A. 63, 66, 42 C.M.R. 255, 258 (1970). Yet despite Appellant's status as an active duty member of the armed forces at the time of his offense, the Government concedes that this case should be governed by the same First Amendment standards that apply in civilian courts. We agree.

Appellant's speech occurred far off base in a civilian setting. Appellant was wearing his civilian clothes, and there is no evidence in the record that there were any other visible indications of Appellant's military status. To all the other people involved in the incident, Appellant appeared

---

[2] *See, e.g.*, *United States v. Stevens*, 19 M.J. 284, 284 (C.M.A. 1985) (alleging that the accused caused "a breach of the peace by painting a bull's eye on his torso and wrongfully entering the Flight Deck . . . [and] by wrongfully boarding an F-14 aircraft, pulling the ejection system safety pins, and threatening to kill himself while seated in the ejection seat"); *United States v. Kelson*, 3 M.J. 139, 140 (C.M.A. 1977) (claiming that the accused breached the peace " 'by wrongfully standing on tables, shouting and throwing beer mugs in the Beer Tent' "); *United States v. Hewson*, 13 C.M.A. 506, 507, 33 C.M.R. 38, 39 (1963) (charging a servicemember under Article 116, UCMJ, for "[causing] 'a breach of the peace by wrongfully shouting, striking the bars of his cell, shaking his cell door, jumping and kicking in his cell and on his bunk, and starting a fire in his cell' ").

to be a civilian. The Government agrees that Appellant's speech in no way interfered with the military mission and had no nexus to the military environment. We therefore apply the same First Amendment law that applies in the civilian courts.

### B. Breach of the Peace and the First Amendment

The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I. Since its enactment, the First Amendment has "permitted restrictions upon the content of speech in a few limited areas." *United States v. Stevens*, 559 U.S. 460, 468 (2010). These "historic and traditional categories" are "long familiar to the bar." *Id.* (internal quotation marks omitted) (citation omitted). They include: (1) incitement to imminent lawless action; (2) obscenity; (3) defamation; (4) speech integral to criminal conduct; (5) fighting words; (6) child pornography; (7) fraud; (8) true threats; and (9) speech presenting some grave and imminent threat the Government has the power to prevent. *United States v. Alvarez*, 567 U.S. 709, 717 (2012). If a content-based restriction on speech does not fall within one of these historically recognized categories, the restriction is presumed to be unconstitutional.[3] *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571 (1942); *Ashcroft v. American Civil Liberties Union*, 542 U.S. 656, 660 (2004); *see also Alvarez*, 567 U.S. 709.

The Government argues that Appellant's statements to AB were unprotected by the First Amendment for two reasons. First, the Government contends that under the Supreme Court's decision in *Bose Corp.*, some speech that

---

[3] The Supreme Court has established that content-based restrictions on speech "may be justified," notwithstanding this presumption, "if the government proves that they are narrowly tailored to serve compelling state interests." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015) (describing the test of "strict scrutiny" to which content-based restrictions on speech are subjected). The Government, however, makes no argument that it has offered such proof in this case.

does not qualify as one of the specifically enumerated categories of unprotected speech may still be unprotected by the First Amendment if it has such minimal societal value that "any benefit that may be derived from [it] is clearly outweighed by the social interest in order and morality." 466 U.S. at 504. Second, the Government claims that Appellant's statements to AB qualify as unprotected dangerous speech. We disagree on both counts.

### 1. No First Amendment Balancing Test

First, we reject the Government's assertion that the Supreme Court has created a catchall First Amendment test that operates outside of the traditional categorical approach. The Government's theory is based on a line from *Bose Corp.* in which the Supreme Court stated:

> [T]here are categories of communication and certain special utterances to which the majestic protection of the First Amendment does not extend because they "are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality."

*Id.* (quoting *Chaplinsky*, 315 U.S. at 572).

We disagree that this language established a First Amendment balancing test for speech that falls outside the designated categories of unprotected speech. Instead, we read this line as merely explaining why some of those categories—including libelous speech (the type of speech at issue in *Bose Corp.*)—are not protected by the First Amendment. Our interpretation is supported by the fact that the *Bose Corp.* majority applied the traditional categorical approach throughout its opinion rather than balancing the value of the speech in question against any societal interests. Moreover, the Supreme Court stated in *Stevens* that it "has often *described* historically unprotected categories of speech as being of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and

9

morality." 559 U.S. at 470 (internal quotation marks omitted) (citations omitted).

In *Stevens*, the Supreme Court confronted the same theory that the Government presents to us now—that whether particular speech receives constitutional protection " 'depends upon a categorical balancing of the value of the speech against its societal costs.' " *Id.* (quoting Brief for the United States at 8). The *Stevens* Court rejected the existence of a First Amendment balancing test, explaining that the Government is not permitted as a general matter "to imprison any speaker so long as his speech is deemed valueless or unnecessary, or so long as an ad hoc calculus of costs and benefits tilts in a statute's favor." *Id.* at 471; *see also Alvarez*, 567 U.S. at 717 ("In light of the substantial and expansive threats to free expression posed by content-based restrictions, this Court has rejected as 'startling and dangerous' a 'free-floating test for First Amendment coverage . . . [based on] an ad hoc balancing of relative social costs and benefits.' " (alterations in original) (quoting *Stevens*, 559 U.S. at 470)).

### 2. Dangerous Speech and Incitement

The Government also asserts that Appellant's statements to AB qualified as unprotected "dangerous speech." *See Schenck v. United States*, 249 U.S. 47, 52 (1919) (holding that words constitute dangerous speech where they "are used in such circumstances and are of such a nature as to create a clear and present danger that they will bring about the substantive evils that Congress has a right to prevent"). The problem for the Government, however, is that—at least in the civilian context—the category of dangerous speech identified by the Supreme Court in *Schenck* has been supplanted by inciting speech. *See Alvarez*, 567 U.S. at 717 (including "advocacy intended, and likely, to incite imminent lawless action" as a category of unprotected speech but not "dangerous speech").

The *Schenck* dangerous speech test has been the subject of substantial criticism since its inception. *See Brandenburg v. Ohio*, 395 U.S. 444, 454 (1969) (Douglas,

J., concurring) ("When one reads the opinions closely and sees when and how the 'clear and present danger' test has been applied, great misgivings are aroused."); *Gitlow v. New York*, 268 U.S. 652, 673 (1925) (Holmes, J., dissenting) (criticizing the broad use of the clear and present danger test in part because "[e]very idea is an incitement"). Although the Supreme Court has never officially overruled the dangerous speech test from *Schenck*, that test has effectively been abrogated by the more speaker-friendly *Brandenburg* test in which speech constitutes incitement only if it is "directed to inciting or producing imminent lawless action and is likely to incite or produce such action." 395 U.S. at 447; *see also Denver Area Educ. Telecomms. Consortium, Inc. v. FCC*, 518 U.S. 727, 778 (Souter, J., concurring) ("[T]he clear and present danger [test] of *Schenck v. United States . . .* evolved into the modern incitement rule of *Brandenburg v. Ohio*.").

Applying the *Brandenburg* test, Appellant's speech was not unprotected because it was not likely to incite any imminent lawless action. The Government argues that Appellant's statements to AB were likely to cause a physical altercation between Appellant and Micky, but we find no evidence to support that assertion. Micky was completely unaware of Appellant's statement because he was browsing the aisles inside the gas station when Appellant made his statement. AB—the actual recipient of Appellant's words—stated that she chuckled in response to Appellant's outburst and told Appellant to leave. Nothing in the record supports the Government's theory that AB was likely to relay Appellant's words to Micky, or that Micky would have responded to hearing them by starting a fight with Appellant.

### 3. Fighting Words

Having rejected the Government's argument for a general balancing test and having concluded that Appellant's speech does not qualify as incitement under *Brandenburg,* we are still left with the question whether Appellant's statements to AB fall within a different unprotected category and thus could be criminal under Article 116, UCMJ.

Appellant argues that only one category of unprotected speech is relevant to convictions for breaching the peace: fighting words. We are not aware of any binding case law supporting that broad assertion (and Appellant cites none), but it is true that fighting words are often associated with breach of the peace statutes. *See, e.g.*, *Chaplinsky*, 315 U.S. at 572 (noting that "fighting words" are "those which by their very utterance inflict injury or tend to incite an immediate breach of the peace" (internal quotation marks omitted) (citation omitted)); *Gooding v. Wilson*, 405 U.S. 518, 528 (1972) (holding that a Georgia breach of the peace statute that criminalized protected speech beyond unprotected fighting words was unconstitutional). Regardless, in this case, the Government has conceded that Appellant's statements that form the basis of his Article 116 conviction do not qualify as fighting words. Although we are not bound by the parties' arguments on questions of law, we agree that Appellant's statements to AB are not fighting words.

In *Chaplinsky*, the Supreme Court recognized a category of unprotected "fighting words" that are "likely to provoke the average person to retaliation." 315 U.S. at 574. In *Cohen v. California*, the Supreme Court clarified that speech does not fall within the fighting words category if it was not directed to a specific person and was unlikely to provoke a violent response. 403 U.S. 15, 20 (1971). *Cohen* addressed an appellant's conviction for wearing a jacket in a courthouse that was inscribed with vulgar and potentially provoking language regarding the draft. *Id.* at 16. Because the words displayed on the jacket were not "directed to the person of the hearer" and "[n]o individual actually or likely to be present could reasonably have regarded the words on appellant's jacket as a direct personal insult," the language written on it did not constitute fighting words. *Id.* at 20.[4] Consistent with Supreme Court precedent, this

---

[4] *See also Texas v. Johnson*, 491 U.S. 397, 409 (1989) (concluding that the accused's expression did not qualify as fighting words because it was neither a direct personal insult nor an invitation to exchange fisticuffs).

Court has held that "[i]n order to be fighting words, the words must constitute a direct personal insult." *United States v. Brown*, 45 M.J. 389, 395 (1996) (citing *Cohen*, 403 U.S. at 15).

We agree with the parties that the charged speech in the present case does not fit within the fighting words category. Although Appellant's statements to AB cautioned Micky to "watch his back," the record indicates that Micky was inside of the gas station at that time and did not hear Appellant's warnings. Rather, because Appellant pulled his car up next to AB and yelled at her out his window, his comments were directed only towards AB. But Appellant's comments were not *about* AB, she was just the conduit through which Appellant chose to express his views about Micky, an absent third party. AB—the intended and actual hearer of Appellant's words—was not the subject of Appellant's message and therefore Appellant's words did not constitute a direct personal insult. Similarly, nothing in the record suggests that Appellant invited AB to exchange fisticuffs. Thus, Appellant's charged speech did not amount to fighting words.

### 4. True Threats

In its filings submitting citations to supplemental authorities, the Government argues that fighting words are not the only category of unprotected speech that can breach the peace and suggests that Appellant's statements to AB qualify either as incitement or true threats. Because we have already decided that Appellant's speech did not qualify as incitement under *Brandenburg*, we need only consider whether it qualifies as a true threat.

The Government is correct that the First Amendment permits a ban on "true threats." *Virginia v. Black*, 538 U.S. 343, 344 (2003); *see also R.A.V. v. St. Paul*, 505 U.S. 377, 388 (1992) (explaining that threats of violence are unprotected to guard "individuals from the fear of violence, from the disruption that fear engenders, and from the possibility that the threatened violence will occur"). " 'True threats' encompass those statements where the speaker means to

communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Black*, 538 U.S. at 359.

Appellant's statement to AB does not qualify as a true threat. Appellant did not claim that he was going to harm Micky that night or at some point in the future. Instead, he only suggested that *someone* might try and harm Micky *if* Micky did not watch his back. Further, Appellant advised Micky that a "hard hitter" could cause him injury. But Appellant did not claim to be a "hard hitter" himself and did not assert that he knew any such person. Appellant's words can be interpreted as a warning, but he did not specifically threaten to cause Micky any harm. Accordingly, Appellant's words did not constitute a true threat.

## C. Conclusion

In this case, Appellant satisfied his burden on plain error review by pointing to specific facts in the record that established that the charged conduct—his statements to gas station attendant AB—qualified as protected speech under the First Amendment in a civilian context. In his briefs and at oral argument, Appellant's counsel persuasively argued that there is no free-floating balancing test for free speech, and that the speech that formed the basis of his Article 116 conviction does not fall within any of the traditionally recognized categories of unprotected speech— fighting words, true threats, or inciting speech. Because the Government elected to charge Appellant for breaching the peace based on his speech alone, his Article 116 conviction violates the First Amendment and must be set aside.

## IV. Judgment

The decision of the United States Air Force Court of Criminal Appeals is reversed as to Charge IV and its specification and sentence. The findings of guilty with respect to this charge and specification are set aside, and Charge IV and its specification are dismissed. We affirm the lower court with respect to all other findings. The record of trial is returned to the Judge Advocate General of the Air Force for remand to the Court of Criminal Appeals for

reassessment of the sentence, or for a rehearing on the sentence, if necessary.[5]

---

[5] Historically, it has been this Court's general practice to remand to the courts of criminal appeals (CCAs) for sentence reassessment or a rehearing on the sentence whenever we set aside at least one finding of guilty. In the Military Justice Act of 2016, National Defense Authorization Act for Fiscal Year 2017, Pub. L. No. 114-328, 130 Stat. 2000 (2016), Congress introduced segmented sentencing in which a separate term of confinement and fine is adjudged for each specification in which there was a finding of guilty when sentencing is conducted by the military judge. These provisions became effective on January 1, 2019, and cases with segmented sentences—like this one—are now reaching this Court. Although segmented sentencing significantly simplifies sentence reassessment after a specification has been dismissed, we are mindful that some reassessment is still necessary for the unitary (nonsegmented) component of the sentence, such as the forfeiture of pay and allowances, the reduction in pay grade, and the punitive separation. Because Congress vested the CCAs with express statutory authority to conduct sentence reassessment in Article 66(d)(1)(A), UCMJ, 10 U.S.C. § 866(d)(1)(A) (Supp. III 2019-2022), and because a remand will give the parties a full and fair opportunity to be heard, we find it appropriate to continue our general practice of remanding cases to the CCAs after a specification has been set aside for sentence reassessment or a rehearing on the sentence.